Powell, J.
The Sylvania & Girard Railroad Company sued the Sylvania Lumber Compay for what is called in railroad circles a “per diefti charge,” that is, rental charged by the railroad company for the use by the lumber company of ears turned over by the one to the other for loading. It seems that the Sylvania & Girard Railroad Company was the successor of the Sylvania Railroad Company, and that the lumber company had had with the Sylvania Railroad Company an understanding or agreement by which, if the lumber company would locate its mills upon the railroad company’s line of railway, instead of locating them upon another line of railway, the railroad company would-allow to the lumber company five days free use of each car turned over by the <?ne to the other. After the expiration of five days the lumber company paid the railroad company twenty-five cents per day for the detention. When the Sylvania & Girard Railroad Company bought out the Sylvania Railroad Company it was provided in the contract between the two railroads that the purchasing company would carry out all agreements and understandings that its predecessor had made with the different sawmill companies up and down its line.' The lumber company was not a party to this contract, but it seems 'that it wa.s . the understanding of the officers of the two companies — the railroad company and the lumber company — that cars were to be furnished and free time allowed under the previous arrangement; *657 and for a considerable period of time statements of account were so furnished. There were mutual accounts; and the railroad company in furnishing its statement of cars used, etc., would deduct the five days of free time to be allowed. After a time, and upon a change of officers on the part of the railroad company, statements were furnished by the railroad company to the lumber company, in which the five days allowance was not deducted. These bills or statements were not paid by the lumber company until they had been forwarded to the president, who lived away from the seat of the mills’ operation. These bills, from which the five days free time had not been deducted, were forwarded to the president, and for some'reason were allowed to accumulate in his office. Finally, he checked them up, deducted the free time, and sent the railroad company a check for the remainder. The railroad company declined to accept the check, claiming that the free time should not have been deducted. The ease in the court below came to an issue over this point alone, as to whether the lumber company was entitled to deduct the five days fre'e time from these bills so furnished. The jury found in favor of the defendant as to this issue; and a motion for new trial, based merely on the general grounds, or rather upon the general grounds and other grounds which merely amount to an amplification of the general grounds, was filed by the plaintiff and overruled by the trial judge.
In this court the plaintiff in error insists upon a number of reasons why the verdict is unauthorized. The greatest stress is laid upon the alleged reason that the contract asserted by the defendant as to the free time was unilateral, and too indefinite to be capable of enforcement. We do not think that this agreement was unilateral, though it was indefinite as to time. But to properly understand this point we must not .consider the case with our eyes directed to this point alone, but must view it in connection with its relation to the cause of action said to exist between the parties. The true view of the case, as we apprehend it, is this: The plaintiff’s suit alleged, in effect, that it furnished to the defendants a large number of cars, and that while there was no express agreement that the defendant would pay for them at any particular rate or upon any particular condition, there was a custom, almost universal in railroad circles, by which twenty-five cents per day was the regular rental charge for cars, and that therefore the law im *658 plied a promise on the part of the defendant to pay at this rate for the ears so furnished to it. The defendant’s reply, in effect, is that while the law would ordinarily impty such a ’ promise as against it, nothing further appearing, still in the present case such an implication is not warranted, for the cars were furnished upon the basis of an agreement or understanding’ that the usual price was not to be charged in the ordinary way, but was to be charged only after deducting five days free time. In this view, the agreement pleaded by the defendant is not a contract at all, but merely one of the'terms of the contract upon which the plaintiff sued. To illustrate, if I go to a store and buy goods without asking the price or without having a specific agreement as to price, the law will imply that I promise to pay the usual or customary price; but if the merchant has said to me, at or before the time of my purchase, I will, for special reasons, allow you a discount of 20 per cent, on all goods 3ro.u purchase from me, and the merchant sues me for the price of the goods charged at the usual rate, and I plead that I was to pay only 80 per cent, of the usual rate, by reason of the agreement as to the discount, the merchant who had furnished the goods upon the understanding of a discount to be allowed would be in no position to say that his agreement to give me the discount was unilateral or indefinite. It is true that he could withdraw his discount at any time, so as to affect future purchases, provided that he notified me of his withdrawal; and if I thereafter bought goods I could not claim the discount, but until notice of the withdrawal was given, I could claim the benefit of it. It is true that the evidence as to what was the real understanding between -the parties is somewhat equivocal; but we think there was enough before the jury to authorize them to find that the understanding between the parties was such as to engraft the terms of five days free time upon the contract under which the law implied a promise against the defendant to pay for the cars delivered to it. The contract being essentially implicit in its nature and no+ express, it was not necessary for the defendant to show ány formal agreement with any particular authorized agent of the railroad company that this free time was to be allowed. It would be sufficient if all the circumstances surrounding the furnishing of the ears indicated that the parties, the one as it furnished and the other as it received, understood that the old agreement under *659 which the lumber company and the railroad company previously had been operating was to continue.
■It was conceded that as to certain cars which were to be handled for certain special purposes, no free'time was to be allowed," and that the president of the defendant company, when testifying as a witness and when looking over the accounts, admitted that he was in doubt as to one or more of the items listed in the bill of particulars, and that from the car numbers he suspected that they were cars as to which the defendant company was liable for the rental charges. It is, therefore, possible that the plaintiff might have been entitled to recover a small amount on this account, but as neither the account sued on nor the evidence distinguished between the two classes of cars, and as the burden of proof was upon the plaintiff to make out its case with such particularity as to authorize a verdict for some amount in its favor, we can not overrule the action of the trial judge in refusing a new trial on this account. .
As to the other point made by the plaintiff in error,.that the rendition of these bills sued on, without reduction for free time, amounted to notice that it was no longer abiding the understanding under which the parties had been operating, we hold that this is one of the matters that is concluded by the verdict of the jury. The mere failure to deduct this credit did not ipso facto, or as a matter of law, operate to change the understanding; especially is this true in the light of the fact that it was customary for the defendant company to check up the bills and for the plaintiff company to .allow for the rebates and overcharges on the checking -up. In fact, this very dispute, it seems, arose when the time for checking up came, and arose over the protest of the defendant against the plaintiff’s refusing to allow this deduction which it had written off from the bills .rendered. Under all the circumstances, it was for the jury to say whether the defendant should have understood, from the mere rendition of the bills without reduction, that the plaintiff was no longer willing to furnish the cars under the original agreement which had been existing between the p'arties. The issues involved in the case were essentially issues of fact, and we are not prepared to say that- the jury and the trial judge have not solved them correctly. Judgment affirmed.